**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**


**CLARICE HUSBAND**                                                               **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 2:10cv201KS-MTP**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY**                                                  **DEFENDANT**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Partial Summary Judgment **[#66]**

filed on behalf of defendant State Farm Mutual Automobile Insurance Company ("State

Farm").  The court, having reviewed the motion, the response, the briefs of counsel, the

authorities cited, the pleadings and exhibits on file and being fully advised in the

premises finds that the motion is well taken and should be granted.  The court

specifically finds as follows:


## BACKGROUND

The motor vehicle accident that forms the basis of this lawsuit occurred on

August 6, 2009, when the vehicle in which the plaintiff, Clarice Husband ("Husband"),

was a passenger was rear-ended.  The negligent driver's vehicle ("Page/Crosby

vehicle") had liability limits with an unknown insurer in the amount of $25,000.

Husband's host vehicle was insured by State Farm.  As a result of the wreck, Husband

suffered injuries for which she accepted the $25,000 limit of liability coverage available

on the Page/Crosby vehicle while reserving all rights to uninsured/underinsured motorist (UM) coverage available under her State Farm policy.

Husband's initial claim was filed by her attorney on September 9, 2009.  The claim was assigned to State Farm claims representative, Brashameka  Young ("Young").  During the initial investigation of  Husband's claim, State Farm discovered that the uninsured motorists (UM) selection/rejection form of Husband's policy was improperly executed.  Thereafter, State Farm allotted $100,000 in UM coverage to Husband under the policy, as opposed to the $10,000 listed on the declarations page. As stated above, Husband received $25,000.00 from the tortfeasor's liability insurance policy and State Farm paid $5,000.00 under the medical payments coverage of her policy.

On February 27, 2010, State Farm received a UM demand letter from Husband's attorney setting forth medical expenses of $11,357.93.  Young evaluated Husband's claim by reviewing medical records and obtaining information from Husband's attorney. Young also took it upon herself to discuss Husband's claim with a Mississippi claim representative, Greg Jones, since she determined that was the likely venue should a suit be filed.

Young placed a range of value from $23,358 - $28,358 on Husband's claim. Husband's limitations, according to her medical records, were that she had trouble dressing; could she sleep on the affected shoulder; and continued to suffer some lingering pain.  She has since testified that she will not elect to undergo surgery on her shoulder because she is a diabetic.  As a result of her evaluation, on March 4, 2010, Young mailed Husband's counsel a letter that stated:

"Based on upon the information that we have received, it appears your client has been adequately compensated for this loss.

As such, we do not feel that an Uninsured/Underinsured Motorist tender is due at this time.

If additional documentation is provided that may change our evaluation, we will review it an take appropriate action."

In a letter dated April 27, 2010, and faxed on April 28, 2010, Husband's counsel once again demanded UM limits on behalf of Husband.  This letter included the same amount in medical expenses as the February 27, letter.  On May 11, 2010, Young responded to Husband's second demand with another letter indicating that State Farm did not feel a tender was due.

Husband filed suit on July 22, 2010, in the Circuit Court of Forrest County, Mississippi, alleging that she is entitled to all benefits under her UM policy and that State Farm failed to make a tender according to Louisiana law under the UM policy resulting in bad faith.  State Farm timely filed its Notice of Removal based on diversity jurisdiction and removed the case to this court.  State Farm filed its Answer and Affirmative Defenses on August 24, 2010, denying the allegations set forth in Husband's Complaint.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v.*

*Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the

non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5ᵗʰ Cir. 1980)).


## ANALYSIS AND CONCLUSIONS

The parties do not dispute that substantive Louisiana law applies to this case. Husband was insured under a Louisiana insurance policy; her uninsured motorist claim was adjusted pursuant to Louisiana law; and this case has been litigated pursuant to substantive Louisiana law.

Under Louisiana law, a plaintiff seeking penalties and attorney fees under La. R.S. 22:18922 or La. R.S. 22:19733 has the burden of proving first the insurer received "satisfactory proof of loss."  In *McDill v. Utica Mutual Insurance Co.*, 475 So.2d 1085 (La.1985), the Louisiana Supreme Court defined the term "satisfactory proof of loss" in connection with a claim for penalties under R.S. 22:1892:

> .       A "satisfactory proof of loss" within the meaning of [La. R.S. 22:1892] is that which is sufficient to fully apprise the insurer of the insured's claim. To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.

*McDill*, 475 So. 2d at 1089.

Louisiana R.S. 22:1892 has been held to apply to uninsured or underinsured motorist's claims.  *Hart v. Allstate Insurance Company*, 437 So.2d 823 (La. 1983).  A claimant seeking penalties and attorneys fees under the statute has the burden of proving that the insurer failed to pay the claim within 30 days after receiving "satisfactory proof of loss" of the claim, and that the insurer was arbitrary or capricious in failing to pay.  *McDill*, 475 So. at 1089; *Nelson v. Allstate Ins. Co.*, 464 So. 2d 1015 (La. App. 1 Cir. 1985); *Hart*, *supra*.  An insurer's conduct meets the "arbitrary and capricious" standard when its actions are unjustified, lack a reasonable standard, or are without probable cause or excuse.  *Reed v. State Farm Mutual Auto. Ins. Co.*, 857 So.2d 1012 (La. 2003).  All claims for bad faith or extra-contractual damages under Louisiana law are statutory in nature.

The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay.  *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So.2d 746, 751 (La.App. 2 Cir. 1999).  Statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense.  *Rudloff v. Louisiana Health Services and Indemnity Co.*, 385 So.2d 767, 771 (La. 1980).

In *Jackson v. Moore*, 517 So.2d 879 (La.App. 3 Cir. 1987), Jackson sued Moore, Moore's liability carrier, and Allstate Insurance Company, her UM carrier for injuries sustained in an automobile accident.  The trial court denied Jackson's request for penalties and attorney's fees from Allstate because of its alleged failure to unconditionally tender a good faith amount of general damages that she claimed were due her for injuries she sustained in an automobile accident.  The Louisiana Third

Circuit Court of Appeal affirmed the trial court's holding on the basis that Jackson failed to establish that the tortfeasor was underinsured by an amount over which reasonable minds could not differ. *Id.*

Prior to trial, Moore's liability carrier tendered the limits of its policy, $10,000.00, to Jackson. Additionally, Allstate paid $1,180.45 under its medical payments coverage for medical bills incurred as a result of the accident before trial. Allstate admitted liability. The jury was to decide the amount of damages to which Jackson was entitled without knowledge of the amounts she had received prior to trial and the court was to determine whether Allstate was subject to penalties. Ultimately, the jury returned a verdict for $15,223.38. The trial court held that Allstate was not subject to penalties based that decision on its pre-trial tender of $1,180.45. The Court of Appeal affirmed the trial court's denial of penalties by concluding that Jackson had not met her burden of proof regarding satisfactory proof of loss because of she was unable to prove that the tortfeasor was underinsured by an amount over which reasonable minds could not differ.

State Farm asserts the facts here are nearly identical to *Jackson.* In this case, State Farm has admitted liability on the part of the tortfeasor; the tortfeasor's liability carrier has tendered their limits of $25,000.00; and State Farm has exhausted its medical payments coverage limits of $5,000.00. Husband submitted $11,357.93 in medical specials related to the accident and her medical records indicated that her limitations were confined to difficulty in unhooking her bra strap and discomfort in sleeping on her injured shoulder. Despite recommendations from her treating orthopedic surgeon, Dr. Nipper, Husband has declined the option of surgical shoulder

-8-

repair.  After discussing Husband's claim with Mississippi claim representative Greg

Jones, Young evaluated Husband's general damages to be between $12,000.00 and

$17,000.00.  This resulted in an evaluation range of $23,357.93 to $28,357.93 and

Husband has received $30,000.00 in payments related to her injuries.

       State Farm argues that within ten days of receiving Husband's initial UM demand

on February 27, 2010, it responded in writing stating its belief that Husband had been

adequately compensated for her injuries.  State Farm further stated that should

additional documentation be received, it would review the documentation.  State Farm

points out that no additional medical documentation had been provided when Husband

submitted her second demand for UM limits on April 27, 2010.  Again, within days, State

Farm notified Husband that it felt like she had been compensated for her injuries from

the accident.

       Thus, State Farm asserts that Husband has not shown that reasonable minds

cannot differ on whether the tortfeasor was underinsured.  Husband has received nearly

$20,000.00 over and above her submitted medical expenses.  She has testified that she

will not have surgery on her shoulder and has not provided any additional

documentation to alter State Farm's evaluation range, according to State Farm.  State

Farm argues that its evaluation and decision were not arbitrary and capricious, but were

made with diligence and reason and that it should not be subject to statutory penalties

and/or attorney's fees.

       In response, Husband argues that State Farm only contests parts two and four of

the *McDill* test, i.e., that Husband was underinsured and the extent of her damages.  To

satisfy *McDill*, a satisfactory proof of loss must include proof of damages above the

negligent motorist's liability limits to meet the first prong and the extent of those damages to meet the fourth prong.  Husband has offered medical records, deposition testimony and expert reports to satisfy her requisite burden of proof, according to her.

Husband insists that her medical records are satisfactory proof of loss and show that she had left shoulder pain immediately after the wreck, headaches, knee pain and chest pain.  She asserts that she sought emergency expert advice for her pain and requisite care right after the accident and that she is still being treated for symptoms related thereto.  Husband also contends that her medical records show that she has a claim for future medical bills.  According to Husband, these medical records and the treating doctor's findings are poof of damages exceeding the negligent driver's policy limits and show the extent of the damages caused by that driver's negligence.  Husband argues that State Farm's determination does not fully take into account her medical records nor her need for future medical care.

Dr. Nipper is an orthopedist who began his treatment of Husband a week after the accident.  A review of Dr. Nipper's testimony reveals that as a result of her rotator cuff tear and related injury to her shoulder, he has recommended surgical repair for Husband, which she has declined.  However, even if Husband underwent the surgery, Dr. Nipper has opined that he in no way could guarantee her full normal range of motion and/or strength to that shoulder.  Dr. Nipper goes on to assign a permanent impairment rating to Husband's shoulder of 24 to 40% and causally relates her injuries and treatment to the accident of August 6, 2009.  Likewise, he also attributes the aggravation of the degenerative condition in her knee to the accident.

Husband has also testified that she is still having pain and restricted movement

in her injured shoulder; is still taking pain medication; and is still seeking treatment.  Her husband testified that there are numerous domestic chores that she is no longer able to do, such as mopping, sweeping, carrying the laundry bag, moving flower pots around and taking things in and out of her car.  She also can no longer play basketball, baseball or volleyball with her children, which she did before.

Husband goes on to argue that the case relied upon by State Farm, *Jackson, supra*, stands only for the proposition that no tender was due for relatively minor injuries totaling $2,191.00.  *Jackson*, according to Husband, also states that general damages, by their very nature, are subjective and incapable of exact computation.  Husband continues, that under *Jackson*, to accept the position that no amount must be tendered unless the exact extent of general damages is proven renders La. R.S.  22:658 (now R.S. 22:1892)  meaningless.

However, the amount an insurer must tender to its insured is that amount which cannot reasonably be disputed.  *Gallagher v. State Farm Ins. Co.*, 760 F. Supp. 562, 564 (E.D. La. 1991).  State Farm thus concludes that Husband has not shown an amount due to her upon which reasonable minds cannot differ, contrary to the requirements in *Gallagher* and *Hart*.  In fact, State Farm points out that Husband admits that reasonable minds can differ as to underinsured status, i.e. whether or not her claim is worth more than $30,000.00 she has received under the tortfeasor's liability policy and through her medical payments coverage.  Her memorandum provides, "Plaintiff has shown and will show that reasonable minds can differ on whether the tortfeasor was underinsured…"  Where reasonable minds can differ, no tender is due.

Husband contends that State Farm is taking "too much" credit for the amounts

tendered to her but cites no case law to support this statement.  However, State Farm is

entitled to a credit for amounts paid under the tortfeasor's liability policy.  La. R.S.

22:1295(4) states that:

> In the event of payment to any person under the coverage required by this
> Section and subject to the terms and conditions of such coverage, the
> insurer making such payment shall, to the extent thereof, be entitled to the
> proceeds of any settlement or judgment resulting from the exercise of any
> rights of recovery of such person against any person or organization
> legally responsible for the bodily injury for which such payment is made,
> including the proceeds recoverable from the assets of the insolvent
> insurer.

La. R.S. 22:1295(4).

Additionally, under Louisiana uninsured motorist insurance law, where the

tortfeasor had liability coverage which was less than the damages suffered by the

innocent party, the latter's UM coverage becomes "excess" insurance.  *Whitten v.

Empire Fire and Marine Insurance Company*, 353 So.2d 1071 (La.App. 2nd Cir., 1977)

("Because uninsured motorist coverage is "excess", plaintiff has a right to receive from

defendant only that portion of his damages which exceed the limits of the tortfeasor's

liability insurance.").  In *Niemann v. Travelers Insurance Company*, 368 So.2d 1003

(La.1979) (abrogated in part by *Egros v. Pempton*, 606 So.2d 780 (La. 1992)), the

Louisiana Supreme Court stated in a footnote that "[t]he UM carrier has no obligation to

pay that portion of plaintiff's damages within the uninsured tortfeasor's liability policy

limits, but only those damages which exceed the policy limits and which are within the

UM policy limits."  368 So.2d at 1007, n.6.

Additionally, State Farm is entitled to a credit for amounts paid to Husband under

her medical payments coverage, contrary to Husband's assertions otherwise.  In *Sutton*

*v. Oncale*, 765 So.2d 1072, 1077 (La. App. 5 Cir. 3/29/00), the court said that "where a plaintiff's total damages do not exceed the UM/UIM policy limits, and the language of the policy allows such, the UM/UIM carrier is entitled to a credit for any amount which it has paid the plaintiff under the medical payments coverage." *See also, Savage v. State Farm Mut. Ins. Co.*, 33 So. 3d 919, 925 (La.App. 5 Cir. 2010). State Farm's policy contained language to prevent double recovery consistent with the holding of *Sutton.* Thus, Husband's arguments opposed to the credit State Farm claims for the tortfeasor payment and the medical coverage payments are without merit.

State Farm concludes that Husband has not shown a genuine issue of material fact that a satisfactory proof of loss was provided which would show she was underinsured as required by *McDill.* The court agrees. Husband has provided medical bills reflecting $11,000 plus in expenses. State Farm insists that contrary to Husband's unsupported and undocumented allegation that State Farm's evaluation did not properly take into account these records, the evidence indicates that the medical records incorporated in her response (and produced by her to State Farm) were indeed included in State Farm's evaluation. Additionally, State Farm contends that the medical records provided to it reflects minimal lingering problems to the Husband's shoulder. Husband asserts that her decision to treat her shoulder conservatively should not affect State Farm's evaluation. State Farm argues this is illogical as one of Husband's claims is for future medical expenses and treatment. She has decided not to have surgery on her injured shoulder. Additionally, despite her decision to be treated conservatively, Husband has testified that she does not like taking medicine. The medical bills, records, and testimony of Husband all contribute to the general damages portion of her

-13-

claim and to State Farm's evaluation of same.

It is undisputed that Husband has received $30,000. Her expert, Mike Anthony, does nothing more than dispute the value of the claim. In fact, Husband admits that Anthony's opinion is that State Farm's evaluation is low. Her expert has not shown that Husband was clearly underinsured nor does he show State Farm's evaluation was arbitrary and capricious.

The insured must prove that the "insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse." *See Holt v. Aetna Cas. & Sur. Co.*, 680 So.2d 117, 130. (La.App. 2 Cir. 1996); and *Morris v. Barideaux*, 2008 U.S. Dist. LEXIS 97015 (E.D. La. Nov. 20, 2008). Further, when "there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits." *Reed v. State Farm Mutual Automobile Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003) (citing *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So.2d at 751).

The court concludes that reasonable minds could differ as to whether Husband's claim is worth more that $30,000.00. She cannot show that State Farm will be clearly liable for some amount of general damages in excess of $30,000.00. Therefore, the requirements of *McDill* and *Hart* have not been met and Husband is not entitled to penalties and/or attorney's fees.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Partial Summary Judgment **[#66]** filed on behalf of defendant State Farm Mutual Automobile Insurance Company is granted and the plaintiff, Clarice Husband, is not entitled to penalties and/or attorney's fees under Louisiana law.

-14-

SO ORDERED AND ADJUDGED this the 4th day of October, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE